**FARR & CO., a partnership of which F. S. Farr, John Farr, W. F. Prescott, E. M. Jonklaas, Emmet Whitlock, L. H. Dixon and John C. Buys are partners, Petitioner-Appellee,**

v.

**CIA. INTERCONTINENTAL DE NAVE-GACION DE CUBA, S. A., Respondent-Appellant.**

No. 127, Docket 24212.

United States Court of Appeals Second Circuit.

Argued Dec. 14, 1956.

Decided Feb. 4, 1957.

Rehearing Denied April 23, 1957.

Kirlin, Campbell & Keating, New York City, for respondent-appellant, James P. Kehoe, New York City, of counsel.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for petitioner-appellee; Yorkston W. Grist, New York City, and Robert J. Byrnes, Brooklyn, N. Y., of counsel.

Before SWAN, LUMBARD and WATERMAN, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from an order entered upon the petition of Farr & Co., subcharterer of a vessel chartered by her owner to the appellant, for brevity called Cia., directing Cia. to appoint an arbitrator and proceed to arbitration in accordance with an arbitration clause contained in the subcharter.[1] The petition was filed pursuant to section 4 of the United States Arbitration Act, 9 U.S.C.A. § 4.[2] The petition alleged, in a supporting affidavit, that a dispute existed with respect to petitioner's claim for damage to sugar carried on the chartered vessel, and that petitioner had appointed an arbitrator and had demanded arbitration but had received no reply from Cia. Service of the petition was made by registered mail addressed to Cia.'s office in Tampa, Florida. Appearing specially, Cia. moved to vacate service of the petition. This motion was denied, and Cia. was directed to appoint its arbitrator within 15 days, and to proceed to arbitration within 30 days, after service of a copy of the order upon its proctors. From this order Cia. has appealed. The order has been stayed pending appeal. Judge Noonan's opinion is reported in D.C., 144 F.Supp. 839.

The appeal raises several interesting questions concerning the United States Arbitration Act, 9 U.S.C.A. § 1 et seq. But before these can be considered, it must be determined whether the order is appealable. The appellee contends it is not. The facts are undisputed. In addition to those above recited it should be stated that in May 1954 Farr & Co. filed a libel against the S.S. Punta Alice, her owner, referred to as Ravena, and Cia., to whom Ravena had chartered the vessel and by whom she had been subchartered to the libelant in June 1953. The libel claimed damage to various shipments of sugar carried on the vessel from Santiago de Cuba to Montevideo, Uruguay—the same claim of which the libelant later demanded arbitration. No jurisdiction *in rem* was acquired over the vessel and no jurisdiction over the person of either respondent was obtained by appearance or service of a citation, and no property of either was ever attached. On February 9, 1956, twenty-one months after filing its libel, Farr & Co. filed its petition for arbitration.

The appellee contends that the order is interlocutory and not appealable. In two cases involving orders, pursuant to 9 U.S.C.A. § 4, to proceed to arbitration, this court has held such an order a final judgment and as such appealable. The matter was first considered in Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 62 F.2d 1004, 1005, where Judge L. Hand said that the order is the "last deliberative action of the court." This was followed in In re Canadian Gulf Line, 2 Cir., 98 F.2d 711, 713. In The Sydfold, D.C.S.D.N.Y., 25 F.Supp. 662, Judge Patterson also considered an order directing arbitration to be a final order. In two other cases we have assumed appealability without discussion. In re Utility Oil Corporation, 2 Cir., 69 F.2d 524, certiorari denied Petroleum Nav. Co. v. Utility Oil Corp., 292 U.S. 655, 54 S.Ct. 866, 78

---

1. Both the charter and the subcharter contained the following clause:

"Any dispute that may arise under this Charter to be settled by arbitration, each party appointing an Arbitrator, and should they be unable to agree, the decision of any Umpire selected by them to be final. The Arbitrators and Umpires are all to be commercial men and resident in New York and the arbitration to take place there. This submission may be made a rule of Court by either party."

2. The first sentence of section 4 provides:

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."

L.Ed. 1504; Petition of Nortuna Shipping Company (Nortuna Shipping Company v. Isbrandtsen Company), 2 Cir., 231 F.2d 528. Other circuits have also held such orders appealable as a final judgment.[3] The appellee argues that the above mentioned cases in this circuit have been impliedly, if not actually, overruled by our later decisions in In re Pahlberg Petition, 131 F.2d 968 and Stathatos v. Arnold Bernstein S.S. Corp., 202 F.2d 525. We do not agree. Any seeming inconsistency between the cases previously cited and the two relied upon by the appellee can be resolved by noting that in the former the order to compel arbitration was made in an independent proceeding under section 4 of the Act, while in the latter the order was made in the course of a continuing suit.

In Pahlberg, the charterer of a vessel filed a libel against the owners; they demanded arbitration and sought a stay of the suit under section 3 of the Act, 9 U.S. C.A. § 3, which was denied. Thereafter Pahlberg, one of the owners, filed his petition under section 4, and from the order directing arbitration the charterer appealed. The appeal was dismissed on the authority of Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989. In that case also the order to proceed to arbitration was made in a pending suit, and in the same order the district court stayed the trial, and reserved jurisdiction to make further orders. It is highly unlikely that Judge Augustus N. Hand, who wrote the Pahlberg opinion, intended to overrule, without even mentioning it, his earlier decision in the Canadian Gulf Line case. Judge Patterson, in The Sydfold, supra, with his usual clarity discussed the distinction between the order in the Schoenamsgruber case and an order in an independent proceeding under section 4 of the Act. We agree with him.

In Stathatos arbitration was ordered under section 4. After the arbitrators had made an award, the winning party (who happens to have been the original petitioner) by a new petition sought and obtained court confirmation of the award. Thereafter on motion of the losing party, the confirmation was set aside, the prior award was vacated, and a resubmission to different arbitrators was ordered. After referring to the Pahlberg and Schoenamsgruber cases Judge Clark wrote [202 F.2d 526]:

> "While the order now at bar is a vacation of a prior award, it is in essence one which continues the proceeding for arbitration, just as do the orders in the cases just cited.
> * * *
>
> "The issue would therefore seem [to be] ruled by the precedents cited to deny appealability to this one step in the continuing process of arbitration here going forward."

The opinion makes no reference to the earlier decisions of this court holding that an order to compel arbitration when made in an independent proceeding is final and appealable. It contains nothing to indicate that those cases were being overruled. On the contrary the authorities cited relate to orders made in a pending suit. Such orders were viewed as being interlocutory.

In the case at bar, although a libel had been filed, the district court had acquired no jurisdiction over the person or property of either respondent. Consequently we view the order on appeal as made in an independent proceeding and being a final and appealable order.

As a precautionary measure, in case the order should be held non-appealable, Cia. has moved for a writ of mandamus or prohibition.[4] Having decided that the

---

3. Goodall-Sanford, Inc., v. United Textile Workers, 1 Cir., 233 F.2d 104, certiorari granted 352 U.S. 822, 71 S.Ct. 61, 1 L. Ed.2d 46; American Locomotive Co. v. Gyro Process Co., 6 Cir., 185 F.2d 316; Continental Grain Co. v. Dant & Russell, 9 Cir., 118 F.2d 967. An excellent discussion of the subject appears in 66 Yale L.J. 293.

4. See International Refugee Organization v. Republic S.S. Corp., 4 Cir., 189 F.2d 858, 861; Stathatos v. Arnold Bernstein S.S. Corp., 2 Cir., 202 F.2d 525, 529 (dissenting opinion).

order is appealable, we need not consider the motion for a writ.

 On the merits, the main question presented by the appeal is whether the district court obtained jurisdiction over appellant by reason of its agreement that the arbitration should take place in New York, and the extraterritorial service by mail of appellee's petition for specific performance of the agreement.[5] Judge Noonan held that it did.[6] We agree. Section 4 of the Arbitration Act requires that when parties have agreed to arbitrate the arbitration be had in the district where the petition is filed. The parties are presumed to have contracted with notice of this venue provision, and since the arbitration was to take place in New York and "This submission may be made a rule of court by either party," they consented to the jurisdiction of the district court in New York, where the petition was filed. Although New York cases are not controlling on us, their reasoning supports this conclusion. Thus, in Gilbert v. Burnstine, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453, it was held that an agreement to arbitrate in Great Britain was a consent to jurisdiction of the courts of Great Britain. The Gilbert case was cited by this court in Bowles v. J. J. Schmitt & Co., 2 Cir., 170 F.2d 617, 622, for the proposition that "In general, jurisdiction can be granted by consent and by a consent given prior to the beginning of an action." The case of Jackson v. Kentucky River Mills, D.C. E.D.Ky., 65 F.Supp. 601, upon which the appellant strongly relies, is readily distinguishable. There the contract between a New York citizen and a Kentucky corporation provided for arbitration in New York. The plaintiff gave the defendant notice by registered mail of a demand for arbitration and appointment of an arbitrator. The defendant did not appear in the arbitration and, after the plaintiff obtained a judgment in New York on the award, suit was instituted in Kentucky on the judgment. The court held that the New York court which rendered the judgment did not have jurisdiction of the person of the defendant and the judgment was a nullity. The case was distinguished from Gilbert v. Burnstine and is distinguishable from the case at bar because the contract between the parties provided that "'the arbitration shall be enforceable under and pursuant to the laws of the State, Country or Government having jurisdiction and that judgment upon the award may be entered in any court of any such jurisdiction.'" The court pointed out that this specific provision, not present in the contract before us, precluded any implication that the parties intended, merely by agreeing to arbitrate in New York, to consent to the jurisdiction of any court not otherwise "having jurisdiction." The court then concluded, 65 F.Supp. 601, at page 605, that "the parties treated judicial proceedings for judgment upon an award as an entirely different matter from the arbitration proceedings as such."

5. The agreement to arbitrate is set forth in note 1, supra. The extraterritorial service was made, as already stated, by registered letter sent to appellant's office in Tampa, Florida.

6. His opinion, 144 F.Supp. at page 840 states:
"The parties herein having previously agreed to arbitrate disputes arising under the Charter, and having agreed therein that the arbitrators and umpire shall be New York residents and that the arbitration shall take place in New York, a party to that charter cannot now say that, being a foreign corporation, it is not in New York for jurisdictional purposes when an attempt is made to enforce that arbitration agreement.
"Title 9 U.S.C. § 4 provides for the jurisdiction of a federal district court and the parties themselves provided for venue in New York under these circumstances; the parties herein thus having consented to the jurisdiction of a New York arbitration proceeding, the consent would be meaningless unless the consenting party thereby also consented to the jurisdiction and venue of the court that could compel the proceeding in New York."

The appellant's argument that deciding in favor of consent jurisdiction will nullify section 8 of the Act, 9 U.S.C.A. § 8, which permits the aggrieved party to begin his proceeding by seizure of property, is untenable. The premise of the argument is, that there can be no *in rem* jurisdiction under § 8 if *in personam* jurisdiction is available. This premise is faulty. An aggrieved party has the choice of proceeding either by seizure of property under § 8 or without seizure under § 4.[7] All our decision does is to say that by agreeing to arbitrate in New York a party makes himself as amenable to suit as if he were physically present in New York.

It remains to determine whether the service by mail brought Cia. before the court. The agreement to arbitrate was made in June 1953, and it may be conceded that prior to the 1954 amendment to section 4 of the Act, service by mail was not authorized.[8] The amendment changed the last sentence quoted in note 8, supra, to read: "Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure." Thus these rules, in so far as applicable to service of petitions for arbitration, were incorporated into the federal Arbitration Act. Rule 4(d) (7), Fed.Rules Civ.Proc. 28 U.S.C.A., is printed in the margin.[9] It seems apparent that by incorporating this Rule, Congress intended to make available to petitioners under section 4, either the manner of service prescribed by any statute of the United States or the manner of service prescribed by the law of the state in which the petition was brought. The appellant disputes that the amendment has this effect. It argues, stressing the words "in an action" in Rule 4(d) (7), that the state rule as to service of a *summons* must be followed. This argument ignores the words "or other like process" which immediately follow "service of summons." As the amendment dealt only with service of a petition to compel arbitration, we cannot doubt that Congress intended to permit the state method of serving arbitration process to be followed. Although in state nomenclature, a petition to compel arbitration is termed a "special proceeding" rather than an "action," to carry this terminology into Rule 4(d) (7) would defeat the purpose of the amendment of section 4, and would unreasonably limit the definition of "action" in Rule 2, Fed.R.Civ.P., which is broad enough to include an arbitration proceeding.[10]

A further argument against the conclusion that Rule 4(d) (7) incorporates the state method of service is based

---

7. See The Anaconda v. American Sugar Refining Co., 322 U.S. 42, 45, 64 S.Ct. 863, 865, 88 L.Ed. 1117: "Finally we turn to Section 4. * * *. From this provision it is clear that the parties may proceed in an admiralty case without the customary libel and seizure. And it has been so held."

8. Prior to the amendment § 4 read in part:
 "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any court of the United States which, save for such agreement, would have jurisdiction, under the judicial code at law, in equity, or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by law for the service of summons in the jurisdiction in which the proceeding is brought."

9. 4(d) (7), Fed.R.Civ.P.:
 "Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

10. See Stathatos v. Arnold Bernstein S.S. Corp., 2 Cir., 202 F.2d 525, 527, footnote 1.

on Rule 4(f).[11] In our opinion the territorial limitation of Rule 4(f) relates to the service of federal process and does not limit the use of state process authorized by Rule 4(d) (7). Such was the holding in Griffin v. Ensign, 3 Cir., 234 F.2d 307, 311.[12]

The amendment to section 4 by incorporating Rule 4(d) (7) permits use of the state method of serving process to compel specific performance of an arbitration agreement. New York cases hold that service by mail outside the state is sufficient if permitted by the law of the state where the arbitration was agreed to be had.[13] The notice mailed to the appellant's office in Florida was adequate to enable it to make defense to the petition. Hence it satisfied the requirements of due process.[14] For the reasons above stated we hold that the court acquired jurisdiction *in personam* over the appellant.

The final question is whether the appellee waived its right to arbitration when it filed its libel without requesting arbitration. In Richard Nathan Corp. v. Diacon-Zadeh, D.C.S.D.N.Y., 101 F.Supp. 428, 430, Judge Dimock held that the mere commencement of an action does not constitute a waiver of the right to compel arbitration. Judge Patterson in The Belize, D.C.S.D.N.Y., 25 F.Supp. 663, 664, held that after issue had been joined on the merits in the admiralty court it was too late for the libellant to draw back and compel arbitration. In the case at bar the libel never got beyond the initial stage of filing; no party was served or entered appearance; no property was attached, no answer filed. These facts distinguish the present case from the authorities cited by the appellant. Furthermore, it may be doubted whether the appellant can raise the waiver issue, because it has made only a special appearance, and also because the point was first brought to the attention of Judge Noonan on motion for reargument and, so far as appears, was not considered by him.

Order affirmed.

On Petition for Rehearing.

PER CURIAM.

The appellant's petition for rehearing has raised a point not previously presented to us based on Rule 4(c) of the Federal Rules of Civil Procedure.[1] The argument is that Rule 4(c) must be read as a limitation upon Rule 4(d) (7) and,

11. "(f). Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

12. See also Judge Chestnut's scholarly discussion in Holbrook v. Cafiero, D.C. D.Md., 18 F.R.D. 218.

13. Gilbert v. Burnstine, 255 N.Y. 348, 174 N.E. 706, 73 A.L.R. 1453; Prosperity Co. v. American Laundry Machinery Co., 271 App.Div. 622, 67 N.Y.S.2d 669, affirmed 297 N.Y. 486, 74 N.E.2d 188; Bradford Woolen Corp. v. Freedman, 189 Misc. 242, 71 N.Y.S.2d 257. See also, Restatement, Conflicts, § 81.

14. See International Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95:

"It is enough that appellant has established such contacts with the state that the particular form of substituted service adopted there gives reasonable assurance that the notice will be actual. * * * Nor can we say that the mailing of the notice of suit to appellant by registered mail at its home office was not reasonably calculated to apprise appellant of the suit."

1. "Rule 4. Process
* * * * *
"(c) *By Whom Served.*
"Service of all process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose, except that a subpoena may be served as provided in Rule 45. Special appointments to serve process shall be made freely when substantial savings in travel fees will result."

as Rule 4(c) was not complied with, our decision is erroneous in holding that service by mail of the petition to compel specific performance of the arbitration agreement was valid.

 We cannot accept this contention. It was clearly not intended that Rule 4(c) limit the broad language of Rule 4(d) (7) permitting service "in the manner prescribed by the law of the state in which the service is made for the service of summons or other like process * * *" Hence personal service may be replaced by service by mail when that method is specifically authorized under the relevant state statute. Any other construction of Rule 4(d) (7) would preclude resort by litigants in the federal courts to those provisions of non-resident motorist statutes that permit service by mail. See, e. g., N. Y. Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, § 52. Since many states had statutes of this type at the time of the promulgation of the Federal Rules, see Giffin v. Ensign, 3 Cir., 1956, 234 F.2d 307, 312, no such restriction upon federal courts sitting in those states could have been intended.

The appellant further contends that the territorial limitation on service of process embodied in Rule 4(f) invalidates the service here employed, and argues that our contrary holding cannot be sustained on the authority of Giffin v. Ensign because in that case, which involved a non-resident motorist statute, service was actually effected within the limits of the state in which the United States District Court sat by serving a state official who was designated by law as the non-resident motorist's agent for service of process. However, the court in that case did not base its holding on this legal fiction, but said without qualification that [234 F.2d 311] "Rule 4(f) does not address itself to or cover non-resident procedures authorized by State law, which are the subject of Rule 4(d) (7)." We agree with that conclusion and find it applicable to the situation at bar.

None of the other points presented by the petition for rehearing requires discussion. We adhere to our decision and deny the petition.